UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

CALVIN PAUL VERDUN                                                                                      PLAINTIFF

VERSUS                                                          CIVIL ACTION NO. 1:09CV169-LG-RHW

SHERIFF DAVID ALLISON et al                                                                   DEFENDANTS

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Plaintiff Calvin Paul Verdun, proceeding pro se and in forma pauperis, filed a 42 U.S.C. § 1983 prisoner civil rights complaint alleging that officials at the Pearl River County jail failed to protect him from attacks by other inmates, denied him constitutionally adequate medical care, and subjected him to unconstitutional conditions of confinement.  Plaintiff also has asserted that his constitutional rights were violated when an officer with the Hancock County Sheriff's Office entered and searched his house on two occasions without a search warrant.

The Court entered an [10] Order of Partial Dismissal, in which it dismissed claims against Hancock County Sheriff Steve Garber and inmate Shawn Dillard.  On May 27, 2009, the undersigned conducted a screening hearing pursuant to 28 U.S.C. § 1915A.  Plaintiff then filed an [19] Amended Complaint, in which he named a host of additional Defendants, which prompted the undersigned to conduct a supplemental screening hearing on February 10, 2010. The Court notes that Plaintiff has been released from custody since the last screening hearing.

Pursuant to § 1915(e)(2)(B)(ii), the Court "shall dismiss the case at any time" if the action "fails to state a claim on which relief may be granted."  Furthermore, pursuant to § 1915A(b)(1), the Court after conducting a screening hearing, shall dismiss a complaint if it "is frivolous, malicious, or fails to state a claim upon which relief may be granted."  The undersigned has

reviewed Plaintiff's complaint and amended complaint, as well as Plaintiff's statements from the screening hearing, and the undersigned finds that he has failed to state a claim upon which relief may be granted. Hence, the undersigned recommends that his complaint should be dismissed pursuant 28 U.S.C. § 1915(e)(1)(B)(ii).

### **Failure to Protect**

Plaintiff alleges three incidents where Defendants failed to protect him from attack by other inmates. Prison officials have a constitutional duty to protect inmates from violence at the hands of their fellow inmates. *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir. 2006). However, prison officials are not expected to prevent all inmate-on-inmate violence. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003). An inmate "must show that he is incarcerated under conditions posing a substantial risk of serious harm" and that prison officials were deliberately indifferent to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). An official acts with the requisite deliberate indifference if he is aware of an "excessive risk to inmate . . . safety" and disregards that risk. *Id.* at 837. An officer's awareness of the risk is evaluated subjectively. *Longoria*, 473 F.3d at 592-93. A prison official knows of an excessive risk only if (1) he is aware of facts from which he could infer that a substantial risk of serious harm exists and (2) he in fact draws the inference. *Id.* at 593. No liability exists if an official reasonably responded to a known substantial risk, even if the harm was ultimately not averted. *Id.*

Regarding an incident of April 18, 2008, Plaintiff alleged that he was attacked by other inmates because prison officials placed him in the wrong zone. According to Verdun, this attack occurred within 24 hours of his being arrested. He asserts that prison officials should have placed him in protective custody because he was charged with a sex offense. Plaintiff states that

he did not receive any injuries during this incident but was subjected to threats and was shoved. Plaintiff was immediately removed from the zone and placed in protective custody following the incident. The undersigned finds that as a matter of law this incident does not state a cause of action for failure to protect. Plaintiff's brief encounter with other inmates that did not result in any injuries fails to state a claim.

Plaintiff alleged that in July of 2008, he was raped by another inmate, Shawn Dillard. According to Plaintiff, none of the prison officials knew that Dillard was going to assault Plaintiff. In fact, at the screening hearing, Plaintiff stated that everything was fine between Dillard and him until Dillard was convicted, at which time Dillard "kind of flipped". The undersigned finds that Plaintiff has failed to state a cause of action for failure to protect regarding this incident because Plaintiff admits that none of the Defendants was aware of a risk to Plaintiff's safety prior to the incident.

Plaintiff also alleges that he was attacked by an inmate named Melvin Nixon on November 17, 2008. Plaintiff alleges that he suffered whiplash-like symptoms following the incident. Plaintiff makes the assertion that Nixon had a problem with all of the sex offenders in the zone and not just Plaintiff. When questioned whether any of the employees at the Pearl River County jail knew that Nixon was going to attack Plaintiff, he stated that Terry Poe and Jeff Brady, who were transport officers, heard Nixon say prior to the attack that he was going to kill all of the sex offenders. Plaintiff has variously stated that the attack occurred approximately ten minutes, 30 minutes or one hour after Nixon made his threat.

At the time of the November 17th incident, Plaintiff was in protective custody. After Nixon's threats and after Poe and Brady left the lock down area, Nurse Ann Berner entered the

zone to hand out bathroom tissue.  A guard named Bruce, whose last name is unknown, was working in the guard tower.  Bruce opened the doors to the cells in lock down to allow Nurse Berner to distribute the bathroom tissue.  At this moment, Nixon attacked Plaintiff.  Plaintiff asserted that normally doors are opened one at a time, but on this occasion the tower guard opened all of the doors at once.

The undersigned finds that Plaintiff has failed to state a cause of action with respect to the November 17th incident.  First, Nixon did not make a specific and individualized threat against Plaintiff.  Rather, Nixon's threats were against all sex offenders in the zone.  Second, Plaintiff has not alleged that Ann Berner or Bruce the tower guard was aware of the threats made by Nixon.  Thus, they would not have known to protect Plaintiff from any risk of harm during the bathroom tissue distribution.  Although Poe and Brady allegedly heard Nixon's threats against all sex offenders, Poe and Brady were transport officers and were not present when the attack occurred.  Finally, Plaintiff was housed in lock down or protective custody.  Thus, jail officials were taking reasonable steps to secure Plaintiff's safety.  Opening the doors in the protective custody zone in order to distribute bathroom tissues does not represent deliberate indifference on the part of any of the named Defendants such that they failed to protect Plaintiff from a known risk to his health or safety.

**Denial of Medical Care**

Plaintiff alleges that he did not receive constitutionally adequate medical care.  Specifically, he alleges that prison officials did not give Plaintiff a TB test upon his arrival at the jail;  they did not treat his staph infections;  his teeth were not examined or treated;  prison officials did not test him for any diseases after he was raped by Dillard; and he did not receive

adequate medical care following the altercation with inmate Nixon.  To state a constitutional claim for denial of adequate medical care, Plaintiff must demonstrate that Defendants were deliberately indifferent to Plaintiff's serious medical needs, such that it constituted an unnecessary and wanton infliction of pain.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  A prison official is not liable for the denial of medical treatment unless the official knows of and disregards an excessive risk to inmate health or safety.  *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).  An allegation of malpractice or mere negligence is insufficient to state a claim. *Hall v. Thomas*, 190 F.3d 693, 697 (5th Cir. 1999).  Moreover, the fact that a prisoner disagrees with the type of medical treatment does not constitute a constitutional deprivation.  *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

      Plaintiff does not allege that he suffers from TB or from any condition related to the rape by Dillard.  Moreover, Plaintiff is no longer incarcerated and may have tests for TB or other diseases performed himself.  To state a constitutional claim, Plaintiff must allege a serious medical need.  With respect to TB and the Dillard rape, he only alleges the potential for a serious medical condition.  Because he has not alleged a current, serious medical need, he has failed to state a cause of action.

      With regard to staph infections, Plaintiff alleges that he contracted a staph infection while at the jail.  No one diagnosed him with staph, but jail personnel did give Plaintiff a band aid and told him to keep the affected area covered.  At the screening hearing, Plaintiff stated that every time he complained about the skin condition, the nurse would give him salve and a band aid.  Based on Plaintiff's testimony, it is apparent that Defendants were not indifferent to his medical condition.  Rather, each time he complained, he received treatment.  Plaintiff may disagree with

the method of treatment, but he has not alleged or demonstrated deliberate indifference to his condition.  Hence, he has failed to state a claim with respect to his alleged staph infections.

Following the attack by Nixon, Plaintiff received extensive medical treatment.  He saw the jail nurse the day after the attack.  He was later transported to the hospital where he was x-rayed, given a neck brace, and an injection of some type.  He also received Flexeril.  Jail officials allowed him to keep his neck brace only for about a day and a half.  Jail officials allowed Plaintiff to stay in the medical room for a couple of days after the incident.  It is obvious from Plaintiff's recitation of events that, although he may disagree with the type and extent of treatment received, jail officials were not deliberately indifferent to his injury.

Plaintiff asserts that he received inadequate dental care.  However, he admits that he was taken to the dentist on at least three occasions and that he had a tooth pulled.  He also stated that he regularly received ibuprofen for pain from his teeth.  Prior to incarceration, Plaintiff had not seen a dentist since around the time of Hurricane Katrina (August, 2005).  Plaintiff complains that Defendants should have given him a "plate" or mouthpiece for his teeth grinding.  Again, Plaintiff is complaining about the type and extent of treatment and does not allege that his dental care was deliberately indifferent such that it rose to the level of constitutionally inadequate care.  Plaintiff is no longer incarcerated, so any ongoing dental care is now his responsibility.

### Conditions of Confinement

The undersigned finds that Plaintiff's allegations of unconstitutional conditions of confinement fail to state a claim or are moot.  Moreover, his claims are for the most part frivolous and do not rise to the level of a constitutional violation.  Plaintiff alleges that while in protective custody he was not allowed to shower for four days and did not receive any bathroom

tissue during this time frame either.  However, he received bathroom tissue and was allowed to shower for the remainder of his time at the jail.  He complained that he did not get an hour a day out of his cell for three weeks.  He also complained that there was mold in the showers, water dripping from the ceiling, inadequate pest control, clogged air vents, discolored drinking water, guards verbally abusing him and opening his mail, and he signed up for GED classes but the paperwork was lost so he did not get to attend classes.

The Constitution does not require that inmates be housed in comfortable prisons; however, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded humane conditions of confinement and prison officials are to ensure that inmates receive adequate food, shelter, clothing, and medical care.  *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001).  In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish (1) that the deprivation alleged was sufficiently serious, i.e. an official's act or omission must have resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison official possessed a sufficiently culpable state of mind.  *Id.*  The required state of mind is one of deliberate indifference to inmate health or safety.  *Id.*  Deliberate indifference is established by showing that prison officials (1) were aware of facts from which an inference of excessive risk to the prisoner's health or safety could be drawn; and (2) that they actually drew an inference that such potential for harm existed.  Pursuant to 42 U.S.C. § 1997e(e), an inmate may not recover for emotional or mental damages without a showing of a specific physical injury.  *Id.* at 665.

The undersigned notes that Plaintiff is no longer incarcerated.  Consequently, his claims regarding conditions of confinement are now moot.  *See Edwards v. Johnson*, 209 F.3d 772, 776

(5th Cir. 2000); *Rocky v. King*, 900 F.2d 864, 867 (5th Cir. 1990). Plaintiff also concedes that some conditions at the jail had "improved a lot" by the time of the initial screening hearing. He does not allege any injuries from the allegedly unsanitary conditions of confinement. He stated that he had headaches but conceded that the headaches could have been as a result of an accident prior to incarceration. Based on the foregoing, the undersigned concludes that Plaintiffs' claims for unconstitutional conditions of confinement are either moot; failed to rise to a level such that Plaintiff was deprived of the minimal civilized measures of life's necessities; or failed to produce a requisite injury.

### Warrantless Search and Slander

At the supplemental screening hearing, Plaintiff alleged that his constitutional rights were violated by Tim Campbell, a police officer with the Hancock County Sheriff's Department. Plaintiff alleged that Officer Campbell entered his house twice without a search warrant. He also alleged that police slandered him to his friends and at his place of employment. Plaintiff did not identify Officer Campbell as a Defendant in either his complaint or amended complaint. Regardless, the undersigned concludes that these claims are completely unrelated to the various constitutional claims alleged against Pearl River County and the officials at the Pearl River County jail. At the screening hearing, the undersigned instructed Plaintiff that he needs to file a separate complaint if he wishes to pursue these claims.

### RECOMMENDATION

Based on the foregoing, the undersigned recommends that Plaintiff's 42 U.S.C. § 1983 civil rights complaint be dismissed with prejudice for failure to state a claim upon which relief may be granted.

**NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, any party who objects to this Report and Recommendation must, within fourteen (14) days after being served a copy of the Report and Recommendation file with the Clerk of this Court his written objections to the Report and Recommendation, and must serve them upon the other parties and submit them to the assigned District Judge. Within seven (7) days of service of the objection, the opposing party or parties must either serve and file a response or notify the District Judge that they do not intent to respond to the objection. An objecting party must specifically identify those findings, conclusions, and recommendations to which he objects; the District court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED, this the 29th day of September, 2010.

s/ *Robert H. Walker*<br>
UNITED STATES MAGISTRATE JUDGE